The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: January 29 2007

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 05-73673 |
| | ) | |
| Tamara L. Clark, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### GRANTING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS

This case is before the court on the United States Trustee's ("UST") Motion to Dismiss brought under 11 U.S.C. § 707(b) [Doc. # 20] and Debtor's response [Doc. # 24]. At the court's request, Debtor supplemented the record with a summary plan description for the plan from which she borrowed money. [Doc. #26]. Debtor's monthly payment on that loan is the subject of the UST's motion. The issue presented is whether certain payments being made by Debtor on the loan constitute disposable income that she can apply to payment of her unsecured debt. For the reasons that follow, the court finds that the loan payments are disposable income and will grant the UST's motion.

### BACKGROUND

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 12, 2005, before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). She is single, has no dependents, and has been employed as a higher education administrator at the University of Toledo for the past seven years. Debtor lists on her bankruptcy schedules no real

property and no creditors holding secured or unsecured priority claims. In Schedule F, she lists unsecured nonpriority claims in the amount of $38,650.62 and in Schedule B, personal property in the amount of $173,539.27, which includes a "retirement plan" valued at $166,309.27.

Debtor's Statement of Financial Affairs reports gross income in 2003 of $42,020 and in 2004 of $42,419. She reports on her Schedule I gross monthly income of $3,782 and monthly income after payroll deductions of $2,581, which deductions include payroll taxes, insurance and a credit union loan payment of $78.26. On her Schedule J, Debtor lists total monthly expenses of $2,511, which includes $1,219 as a monthly payment for "Retirement Loans."

The summary plan description submitted by Debtor indicates that the plan from which she borrowed money was executed by the University of Toledo with the intention "that the plan satisfy the pertinent provisions of Internal Revenue Code Section 401(a)." [Doc. # 28, Plan §1.1]. It further provides that the plan shall be considered and administered as a "profit sharing plan" and includes an anti-alienation provision. [*Id.* at §§ 2.22 and 9.3]. It thus appears that the plan is an ERISA-qualified plan, *see In re Orkin*, 170 B.R. 751, 753 (Bankr. D. Mass.1994) (explaining that "ERISA-qualified"plans include plans that are subject to § 401(a) of the Internal Revenue Code), and the UST does not contend otherwise.

## LAW AND ANALYSIS

Under 11 U.S.C. § 707(b)[1], a court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of [Chapter 7]." Section 707(b) further provides that "[t]here shall be a presumption in favor of granting the relief requested by the debtor." A consumer debt is a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). In her petition, Debtor indicates that the nature of her debts are "Consumer/Non-Business." Thus, the first prerequisite for dismissal under § 707(b) has been satisfied. The second prerequisite requires a finding that the granting of relief under Chapter 7 would be a substantial abuse.

The Bankruptcy Code does not define "substantial abuse." Instead, its meaning was left to be determined by the courts. While courts that have addressed the issue have developed various formulations for analyzing whether the filing of a debtor's petition rises to the level of "substantial abuse," *see In re*

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005, amended § 707(b) in many significant respects. Because Plaintiff's bankruptcy case was filed before the effective date of the Act, unless otherwise noted, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

2

*Attanasio*, 218 B.R. 180 (Bankr. N.D. Ala. 1998) (providing an exhaustive discussion of the various standards employed), this court is bound by the approach set forth by the Sixth Circuit in *In re Krohn*, 886 F.2d 123 (6th Cir. 1989).

In *Krohn*, the Sixth Circuit held that "substantial abuse can be predicated upon either lack of honesty or want of need." *Id.* at 126. The Sixth Circuit set forth a totality of the circumstances test to determine whether the debtor is "merely seeking an advantage over his creditors, or instead is 'honest,' in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets." *Id.*

In this case, the UST raises no issue with regard to Debtor's honesty or good faith. Rather, the UST argues that if Debtor applied the amount she is paying on the loan from her ERISA-qualified account, she could repay her unsecured debts in full in 32 months and, thus, that Debtor is not needy. One of the primary factors to be considered when determining whether a debtor is needy "is [her] ability to repay [her] debts out of future earnings." *Id.* Indeed, "that factor alone may be sufficient to warrant dismissal for substantial abuse." *Id.* The Sixth Circuit explained that "a court would not be justified in concluding that a debtor is needy and worthy of discharge, where [her] disposable income permits liquidation of [her] consumer debts with relative ease." *Id.* Other factors to be considered include "whether the debtor enjoys a stable source of income, whether [s]he is eligible for adjustment of [her] debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease [her] financial predicament, the degree of relief obtainable through private negotiations, and whether [her] expenses can be reduced significantly without depriving [her] of adequate food, clothing, shelter and other necessities." *Id.* at 126-27.

In order to determine whether a debtor has the ability to pay, courts often evaluate whether the debtor has sufficient disposable income to fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). "Disposable income" is defined as "income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor. . . ." 11 U.S.C. § 1325(b)(2).

In this case, Debtor's monthly net income after payroll deductions is $2,581.88. Her listed monthly expenses total $2,511.35, leaving her with only $70.53 per month to apply towards her unsecured debt. However, while Debtor's listed expenses are otherwise reasonable, they include $1,219.23 used to repay her loan from her ERISA-qualified profit-sharing account. In *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995), the Sixth Circuit affirmed the bankruptcy court's decision to reject a Chapter

3

13 plan where the debtor failed to commit funds used to repay a loan from an ERISA-qualified profit-sharing account. The court found that while such "expenditure may represent prudent financial planning, . . . it is not necessary for the 'maintenance or support' of the debtors." *Id.* at 777. The court explained that it would be unfair to creditors to allow debtors "to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *Id.* at 778. Later, the Sixth Circuit found that the reasoning in *Harshbarger* was equally applicable in the context of a § 707(b) motion in determining whether a debtor is "needy," that is, whether the debtor has sufficient disposable income to fund a Chapter 13 plan. *Behlke*, 358 F.3d at 435-36.

This court is bound by the holdings in *Harshbarger* and *Behlke*. Debtor's monthly payment of $1,219.23 used to repay her ERISA-qualified profit sharing account loan constitutes disposable income that she may apply towards payment of her unsecured creditors. If she does so, as the UST correctly contends, she will be able to repay her entire unsecured debt in approximately 32 months. While this fact alone may support a finding of substantial abuse and warrant dismissal of Debtor's Chapter 7 case, the court also considers the facts that she enjoys a stable source of income and is eligible for adjustment of her debts under Chapter 13.

The court rejects Debtor's argument that, in essence, the court should ignore *Harshbarger* and *Behlke* since under the BAPCPA amendments to the Bankruptcy Code, amounts required to repay ERISA-qualified loans are no longer considered "disposable income" in determining amounts required to be applied to unsecured debts in a Chapter 13 plan. *See* 11 U.S.C. § 1322(f) (as amended). The court does not disagree with Debtor's interpretation of § 1322(f) as amended by BAPCPA, and that based on the terms of Debtor's interest in the University of Toledo Alternative Retirement Plan her loan repayments appear to be statutorily excluded from disposable income thereunder. *See also* 11 U.S.C. § 362(b)(19)(post-BAPCPA). However, this is a pre-BAPCPA case and the amendments do not apply to cases commenced under Title 11 before the effective date of the Act. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216. Although Debtor argues that she could simply refile her petition under the amended Bankruptcy Code, the court notes that the § 1322(f) amendment was only one of many significant amendments under BAPCPA relating to consumer bankruptcy cases. The court cannot speculate as to what decisions Debtor might make in light of these amendments or as to her financial situation at some time in the future if and when she decides to refile a bankruptcy petition. Debtor is not entitled to avail herself of both the procedural benefits of filing for Chapter 7 relief before the effective date of the amendments and the substantive benefit offered in her case by certain of the amendments. Congress

4

was clear in demarcating the applicability of the parts of BAPCPA relevant to Debtor's financial situation to cases filed on or after October 17, 2005.

Having considered the totality of the circumstances, and finding that Debtor's disposable income permits repayment of her unsecured debt with relative ease, the court finds that any presumption in favor of granting relief is overcome and concludes that granting Debtor a discharge in this case would be a substantial abuse of the provisions of Chapter 7.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that the United States Trustee's motion [Doc. #20] be, and hereby is, **GRANTED**. Debtor is granted thirty (30) days leave from the date of this order to file a motion to convert to a Chapter 13 case or the case will be dismissed.